```
                    FILED

                    OCT 3 0 2012

         UNITED STATES BANKRUPTCY COURT
          EASTERN DISTRICT OF CALIFORNIA
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>CHRISTIAN ALBERTO ROMERO,<br><br>    Debtor.<br>_____<br><br>JANIS PANIZZA,<br><br>    Plaintiff,<br><br>vs.<br><br>CHRISTIAN ALBERTO ROMERO,<br><br>    Defendant.<br>_____ | Case No. 11-30367-A-7<br><br><br><br><br><br><br>Adv. No. 12-2097<br><br><br><br><br>Date: October 25, 2012<br>Time: 9:00 a.m. |

**MEMORANDUM**

The plaintiff asks that a debt be excepted from the debtor's chapter 7 discharge. To do so, the plaintiff must prove that because she did not receive notice of, or have knowledge of, the chapter 7 case, she was unable to file a timely dischargeability complaint. Then, she must prove that the debt arises from a fraud perpetrated by the debtor. See 11 U.S.C. § 523(a)(2)(A) and (a)(3)(A).

I

When a debtor defrauds a creditor, in order to except the resulting liability from a chapter 7 discharge, the creditor must file a timely complaint in the bankruptcy case. Here, the deadline to file a dischargeability complaint was August 5, 2011. This was 60 days after the first date set for the meeting of creditors. See Fed. R. Bankr. P. 4007(c). The plaintiff did not meet this deadline. Her complaint was filed on February 29, 2012.

It is difficult to fault the plaintiff for meeting the August 5 deadline. The debtor did not list her as a creditor in his schedules and she was not given notice of the filing of the bankruptcy case or of the deadline for filing complaints.

However, the plaintiff was informed of the bankruptcy case by the debtor on July 12, 24 days before the deadline to file complaints expired. This can be determined from the face of the complaint and from two emails sent by the plaintiff to the debtor.

Her complaint alleges: "[The debtor] did not inform the Plaintiff of the filing of the bankruptcy until Plaintiff traveled to Sacramento to the Debtor's office. . . ." While the complaint does not mention the date of this office visit, the debtor sent two emails to the debtor, one on July 12 and another on July 13, referring to the visit as being on July 12. See Exhibits K and L.

Hence, it is clear that the plaintiff learned of the bankruptcy case more than three weeks prior to the deadline to file complaints. There is no evidence from the plaintiff that

-2-

she did any investigation concerning the bankruptcy and its possible impact on her rights against the debtor.

Instead, on July 22, 2011, the plaintiff filed suit in Los Angeles Superior Court. That suit appears calculated to not be seen as an attempt to collect a debt from the debtor and run afoul with his bankruptcy. Rather than demanding damages, it asks the state court to enjoin the debtor from conducting business until the debtor had completed the computer programming he allegedly agreed to do for the plaintiff.

Only after the debtor's bankruptcy attorney warned the plaintiff not to proceed with the state court suit on August 17, 2011, did the plaintiff eventually appear in the bankruptcy case. On December 13, 2011, she unsuccessfully sought relief from the automatic stay in order to proceed in state court. After that motion was denied, this adversary proceeding was filed on February 29, 2012.

Even a creditor receiving no formal notice that its debtor has filed a bankruptcy case may have its claim discharged if the creditor nonetheless learns of the petition. Such knowledge imposes an obligation to inquire further. If the creditor fails to inquire further, it is nonetheless on notice of everything to which such inquiry would have led.

This is the premise of 11 U.S.C. § 523(a)(3). Section 523(a)(3) bars the chapter 7 discharge of a claim omitted from the schedules unless the claim holder "had notice <u>or actual knowledge</u> of the case in time" to file a timely proof of claim or a complaint to except the debt from discharge under 11 U.S.C. § 523(a)(2), (a)(4), or (a)(6).

In In re Price, 871 F.2d 97 (9th Cir. 1989), the Ninth Circuit concluded that a creditor's claim was discharged when the creditor learned of debtor's petition 58 days prior to the bar date but failed to make inquiry of the deadline and failed to file a timely dischargeability complaint.

On the other hand, in Manufacturers Hanover v. Dewalt (In re Dewalt), 961 F.2d 848 (9th Cir. 1992), the Ninth Circuit held that an unscheduled creditor's discovery of a bankruptcy petition seven days prior to the bar date for dischargeability complaints was insufficient notice even though "acting under ideal circumstances and with the utmost of diligence" the creditor might have requested an extension of the bar date.

While the court is mindful that the debtor is and was unrepresented by an attorney, it is clear from the record introduced at trial, that the plaintiff has been very proactive in her efforts, both in this court and in state court, to seek redress from the debtor, and her efforts were underway well before the bankruptcy case was even filed.

Apart from the numerous phone and email interactions with the debtor, her efforts to get the debtor to perform the contract included filing a complaint in state court, a motion to reopen the bankruptcy case, a motion for relief from the automatic stay, and the adversary proceeding. All of this was done without an attorney.

In these circumstances, the court concludes that when the plaintiff actually learned of the bankruptcy case approximately three weeks before the deadline for filing dischargeability complaints, it was incumbent on her to investigate further. Had

she done so, she would have learned of the deadline to file dischargeability complaints in time to file a complaint or to request an extension of the deadline. She did nothing.

The court concludes that the plaintiff had knowledge of the bankruptcy case in sufficient time to ascertain what impact it might have on her claim but she failed to act diligently.

While admitting that her complaint alleges that she learned of the bankruptcy case on July 12, 2011, at trial the plaintiff testified that this allegation was incorrect. She contradicted her complaint by testifying she learned of the bankruptcy after the deadline for filing complaints when she received the debtor's attorney's August 17 letter.

However, this testimony was not credible. It was given only after learning that the allegation in her complaint, viewed in light of the two emails she sent in mid-July, meant that she had learned of the bankruptcy three weeks before the deadline to file dischargeability complaints.

The court concludes that the plaintiff failed to file the complaint prior to the bar date for such complaints despite learning of the bankruptcy case in time to file a timely dischargeability complaint or to request an extension of that deadline.

II

However, even if the court were to conclude that the plaintiff did not learn of the bankruptcy in time to file a timely dischargeability complaint, the result would not change because she has failed to prove fraud.

The plaintiff paid $5,000 and other consideration to the debtor for computer programming services. He was asked to update a program for a children's game so that it would operate on the latest version of the Windows operating system. This program was sold to the public for use on home computers.

The parties disagree as to whether the debtor also agreed to adapt the program so that it, or a scaled down version of it, could be operated on an Internet site without downloading the program onto the user's computer.

The parties signed a written agreement on or about December 1, 2008, for these services and that agreement supports the debtor's assertion that he did not agree to adapt the program to a web-based game. That contract specified that the debtor would "[c]reate a clone software for the web <u>or</u> [a] stand alone application . . . that works on newer operating systems like XP." [Emphasis added.] <u>See</u> Exhibit G.

The debtor delivered the updated stand-alone program on or about August 8, 2009, and hosted it on a website from which purchasers could download the program. <u>See</u> Exhibit F.

After August 8, 2009, the plaintiff made clear to the debtor that she also expected him to develop the web-based application. The debtor made some effort to accommodate her but, as he testified at trial, such work would entail many more hours of programming. He would not agree to do that work for just $5,000 and a cut of the sales. Also, he complained that the plaintiff had failed to provide him with the operating manuals for the program.

///

The plaintiff produced no expert testimony to the effect that the debtor was unqualified to do the work required by the contract, or that he had failed to do it competently. The plaintiff asks the court to infer from the fact that the debtor did not produce a web-based application of her program that he never intended to do that work. At best, the record convinces the court only that plaintiff and the debtor had different understandings of what work was to be done. When it became clear that they each had a different understanding, the debtor made some misguided efforts to appease the plaintiff. But, those efforts do not convince the court that he agreed in the first instance to provide a web-based application or that he misrepresented his intention to do so.

The plaintiff has not proven that the debtor misrepresented his programming abilities or qualifications, or that he misrepresented his intentions to perform the contract as he understood it.

### III

For the foregoing reasons, judgment will be entered for the debtor. Counsel for the debtor shall lodge a conforming order.

Dated: 30 Oct 2012

By the Court

_____
Michael S. McManus, Judge
United States Bankruptcy Court

Case 12-02097    Filed 10/30/12    Doc 17

**CERTIFICATE OF MAILING**

I, Susan C. Cox, in the performance of my duties as a judicial assistant to the Honorable Michael S. McManus, mailed by ordinary mail to each of the parties named below a true copy of the attached document.

C. Hughes
1395 Garden Highway, Ste. 150
Sacramento, CA 95833

Christian Romero
6517 Creekmont Way
Citrus Heights, CA 95621

Janis Panizza
117 W 9th St #323
Los Angeles, CA 90015

Dated: October 30, 2012

　　　　　　　　　　　　　　　　_Susan C. Cox_
　　　　　　　　　　　　　　　　Susan C. Cox
　　　　　　　　　　　　　　　　Judicial Assistant to Judge McManus